Good morning, please the court. John Ellis on behalf of the appellate, Arian Cebreros. This court should vacate Mr. Cebreros' conviction for violating the disturbance regulation for two reasons. First, there was insufficient evidence presented at trial that Mr. Cebreros had actual knowledge that his refusal to submit to a pat-down could result in him being arrested. Well, the standard isn't actual knowledge. If it was, you might well lose. It's actual notice. Actual notice, sorry. Actual notice, absolutely. Actual notice. And second, Your Honor, that I'll cover more quickly as a discovery violation where we believe that the district court abused discretion. I want to turn first and talk about the disorderly conduct statute. It's 41 CFR section 102-74.390. I'm just going to refer to that as a disorderly conduct statute. This statute gets its ability to be promulgated through 40 U.S.C. section 1350. I thought it's not a statute. It's a regulation. It's a regulation, yes, Your Honor. Okay. That matters. It does, Your Honor. I mean, if this were a statute, what's so peculiar about this case is that ordinarily ignorance of the law is not an excuse. And if it were a statute in the statute books, you wouldn't have an argument. Yes, Your Honor. Right? Okay. And I think the court really gets to the core of this, Your Honor, gets to the core of this, because we are dealing with a regulation that really just derives from a different statute. That statute requires that there is a conspicuous posting of the regulation on the premises. Can I ask one question? Is there an open question as to whether the revised statute, because they changed the wording of the statute, whether the notice is still a requirement for the conviction or not? Or does our case law either settle it or does it assume it? I think that's a good question, Your Honor. I think that Bishel is a case that occurs post the 2002 amendments. Right. And it assumes that the notice requirement. It assumes it. I'm just trying to find out whether we've decided it. Because I gather other courts have suggested otherwise. Is that right? That's correct, Your Honor. At least then-Judge Gorsuch in the Tenth Circuit, and there's an unpublished Fourth Circuit opinion, too, that suggests that there might be some issues with that. What I would tell the Court is that the parties did not brief this issue. And I, Will, with all candor, went back and looked back at the changes to the statute. And although it's not briefed, if I can talk briefly about the changes. If not, I understand, because it wasn't briefed. Well, if it's not briefed and the government hasn't argued it, then I assume we're going to assume it, too. So why don't you get to the merits? Yes, Your Honor. So I don't think that the notice provision should be controversial. I think that the conspicuous posting should be considered an element of the offense. Taking a step back, what happens if that is not done, if the government doesn't meet the conspicuous posting requirement? That's where this Court in United States v. Bishel and other courts have really said, look, really what we're getting at with the conspicuous postings is their notice, is their fairness. And in Bishel, they found that although there was no conspicuous posting, once Father Bishel is told, if you don't uncuff yourself from the door, you will be arrested, that gave him the type of notice that we would anticipate or that you would assume someone would receive from the conspicuous posting requirement. Well, here he was told if he didn't stop kicking, he was going to get arrested, wasn't he? He was, Your Honor. And I think that shows two things. First of all, that these are words that the officers understood. But he's told specifically, you kicked an officer, that's against the law, you can go to jail for that. But if we look at the actual charging in this case, he's not Mr. Cerberos was not charged with assaultive conduct. He was charged with resisting. He actually wasn't. He was charged with a violation of Section 102-74.390C, which prohibits, otherwise impedes, or disrupts the performance of official duties by government employees. And then it goes on to say, to wit, and it names the specific officers involved and the resisting. Which was this case. So I understood your argument to be that he had to be notified that resisting arrest was prohibited. And that was the exact conduct that he needed to be advised he couldn't engage in. But that's not what he was charged with. He was charged with impeding official duties, which is a little different. It's broader. It is. I would be more precise. It's specifically under these circumstances, the notice requirement would be, you have to comply with a pat-down or you will be arrested. And the reason it has to be so precise is because this, the rule the Ninth Circuit has created and other circuits have agreed with, is an exception. So if either the government has to do one or two things. One, it has to be, regulations have to be posted in a conspicuous place. Two, if they don't do that, there is a savings. There's still an ability to arrest the person if they're told precisely what the offending conduct is and they're also advised that they can be arrested. But in Bishel, the court did not set out a two-pronged test. The court didn't say you have to be told exactly what you need to stop doing or you have to be advised exactly of the consequences. There's that language, but the court's listing that in a series of explanations of different cases in which what has occurred has been found sufficient to provide actual notice. So are you suggesting that we should read Bishop to require an application of a firm two-pronged test? I do, Your Honor, and I think that there's support from also in the Northern District California case, United States v. Moritz, M-A-R-O-T-Z, and that's the case where Judge Tiger found in interpreting Bishel and the cases cited therein that Bishel does stand for that two-part test. But what's the two-pronged test? What is the two? What two prongs are you talking about? The two prongs would be, or the two parts of it, Your Honor, would be, one, that the person is, receives actual notice that their, that the offending conduct is unlawful. Right. And the second part, which I think is critical, is that they could go to jail. I agree. Okay. But that's different from exact notice because it sets up, if the test were exact notice, it sets up the potential argument that the person would have to be advised step-by-step, no, you can't kick an officer, no, no, you can't struggle, you can't attempt to head-butt an officer, you can't make threats against an officer's family, that the law enforcement officers would have to engage in that litany and anticipate what the person was going to do next to make those warnings. So it can't be that specific. I think, but in this case, Your Honor, it would have been specific enough to say what the purpose of bringing him to secondary inspection was in order to conduct a pat-down. And they did tell him that. They, the supervisor told him, we're taking you to secondary and we need to do a pat-down to see if you have any weapons for your safety and for the safety of the area. They told him that, and the testimony is that they told him that repeatedly as he continued to struggle. The only factual thing I'd say, Your Honor, is that first, Officer Lopez brings him into the secondary area. Later, Supervisor Carr comes up and explains that to him, according to the testimony, we need to pat you down for your safety and our safety. What he's not told at that point is either that you have to, if you do not consent to a pat-down, you could be arrested, or if you continue to interfere, you could be arrested. But he was told that the officers were conducting official duties. They explained to him what they were doing and why. We need to conduct a pat-down, and it's for your safety and ours. He had struggled up until that point. He continued to struggle. He then kicked an officer, and he was told, you've assaulted a federal officer. You could be arrested for that. He used profane language, continued his struggles, and attempted to head-butt an officer. And he had been told he could be arrested, and yet he continued in his conduct. So why should we find he didn't have actual notice that what he was doing was prohibited and that he could be arrested for it? Because those are different, Your Honor, and I think the testimony would show that after the kick, and he's told about the kicking, it's subsequent to that. The pat-down is completed fairly shortly after that. So the officers would have had to say, oh, and by the way, we anticipate that you might threaten our families or attempt to head-butt one of us, and you can't do that either? Well, Your Honor, but he wasn't charged with that conduct. He's charged with obstructing their official duties. He was specifically charged, though, with failing to comply with a pat-down. No. The charge, when you look at the charging document, says, cites the regulation and states, you know, the language of the regulation of obstructing the performance of their duties, and then it says, to wit, and it names particular officers and the specific conduct of the pat-down. It does, Your Honor, by refusing to submit to a pat-down search is the language that was charged. But the statute, the regulation, does not prohibit refusing to submit to a pat-down. It prohibits interfering with official duties. It does, Your Honor, and that's why I was saying that it either has to be the specific do you have to consent to a pat-down, or you can't interfere. Can I turn briefly to my second issue? Very briefly, because you're almost out of time. Very briefly, because you're just about out of time. So I just want to ask the court, with my limited time, to go back and look at the materials that were submitted to this court that were also submitted to the district court that the defense didn't receive. And the reason I ask you to do that is the officer who the claim was kicked in this case, because this wasn't a charged offense, is Officer Marino. It's significant if Officer Marino was the one who had the hint or information about him, because the only way that the government essentially proved the kick in this case was from the testimony of Supervisor Carr and a photograph introduced by Officer Lopez, who did not see the offending kick. Had the government turned this information over and had it been about Officer Marino, then the kick narrative might have been quite different if there was information. Thank you very much. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, a – Can I ask a question? What was the precise charge in this case of which he was convicted? It was the under – I don't have the – 102 – What was in the charging document? Counsel said ER 275, if that helps you. Sure. It was an information charging the language of 102-74.390 that charged him with loitering, exhibiting disorderly conduct, or exhibiting other conduct that impedes or disrupts the performance of official duties by government employees. And didn't say anything about patting down? Well, then it says, to wit, and then it says – All right. That's what I was asking you. To wit. Okay. Pat down and search. Yes. In this case – Why did – as I understand it, the government filed a first information alleged or seeking assault, a claim of assault. Why was that – why was the superseding information filed? Because we wouldn't be here if the regulation wasn't here. So I'm just trying to figure out what went into that calculus. Correct, Your Honor. I don't know. I wasn't the trial attorney below. I'm not sure what calculus went into that and why they sort of downgraded from misdemeanor assault to the purely petty offense regulatory language. So is your argument that he was sufficiently notified by being told that they needed to do the pat down or that he was sufficiently notified by being told after the fact that he could be arrested for kicking the officer? Or is it simply that he – a should have known kind of argument? No, Your Honor. I think it's a combination of how it progressed. As the district court held in this case, the assaultive behavior was part and parcel to the resistance and it was continuous and all directed at resisting the pat down search. If you looked at – Well, that's okay, but where's the notice? The notice comes in sort of two different parts. First, when Officer Carr responded to the area, he repeatedly tried to calm him down and explained in detail, we need to conduct a pat down search for your safety, to search for contraband, and to search for weapons. After that warning as to what their official duties were, he responded by kicking the officer. At that point, the same supervisor in the same tone explained that you just committed assault on an officer. You can go to jail for that. But that's after the fact. It was all part of the – he's continuing to resist. He's telling him this as they're continuing to turn him around. Okay. At that point, he, after receiving warning – But let's say if – and after that, let's assume those two things were enough. Okay? For anything to happen after that. So what happened after that, as I understand it, was he continued to say nasty things, essentially. No, Your Honor, and I think that's the critical point, is after that, he continued to physically – he threatened to headbutt the officer. But he didn't. He made a headbutting motion towards him. So is that what he's being convicted of, for making a headbutting motion and threatening to headbutt the officer? He certainly had actual knowledge at that point that attempting to headbutt an officer was illegal, and he could go to jail for that. And if you look at the testimony of the officer, it wasn't some sort of idle threat, I could headbutt you in the future. They were three officers in a small, enclosed area. Officer Carr had his hand on the defendant's shoulder. So this was a bench trial, and I suppose it would – assuming that that would make sense, he would have to be – the judge would have had to conclude that what happened after the warning about the assault was itself an interference and refusal to pat down. Right? In other words, you'd have to isolate that short period of time. I'm not sure that – given the sort of fluid nature of what was occurring here, I don't know that you necessarily would have to parse it down to that level. Certainly, once you – I mean, this is a strange situation. Ordinarily, you don't need notice of – that you could be arrested for doing a particular thing, but no one seems to be – I gather you're not disputing – I mean, you haven't raised the question of whether this statute actually does require that notice as a condition of the conviction. In Bichelle, the court explicitly stated that that's an open question. A number of courts have come back and – But you didn't argue this in your brief, right? We're not there in this case, is that right? On an actual notice. Okay. So there has to be actual notice. And as you told the story, the actual notice was only completed at the time that they told him that the assault – he could go to jail for the assault of the police. It certainly was completed at that point. I don't think there's any question. Whether having knowledge – having an officer tell you that he needs to conduct a pat-down search and responding by kicking the officer, whether that alone could satisfy the requirement of actual notice. Well, could it? Potentially. I think ultimately in Bichelle, the court said that this has to be a common-sense application. And there is – it's difficult to see how someone could – But it also says that there had to be notice of both the violation and the potential arrest. Well, that was the facts in Bichelle, that because he had knowledge that he could be arrested, that that was sufficient actual notice. The court in that case never established sort of the strict two-part requirement that a defendant be advised that he could be arrested. I guess that was my question in reading Bichelle, is does it set a test or does it just say in this particular case the notice requirement is set? Notice is enough. Actual notice is enough, but not the only way. Yes. I think if you read that section about the exact conduct in Bichelle, it wasn't framed in a way that this is a test for every case. It was just a description of what the facts were in that case, which were very different from here. I mean, that was a sort of static incident where the defendant had chained himself to the courthouse. In addition, if you look at that case, the defendant in that case was not charged with the nuisance and he wasn't charged with chaining himself to the courthouse. He was charged under a different section that prohibited or that required him to abide by the directions of officers. So even the warnings in that case, don't chain yourself to the courthouse, were not directly related to what he was charged with in that case. It was actual notice that what he was doing was illegal, and that's the key here, that a defendant who is told he has to submit to a pattern search in response by kicking an officer in the leg could not reasonably have believed that that behavior was lawful. The penalty is in the regulation, is that right? Or is it in the statute? It's in the regulation, yes. Right. And the statute, when it talks about notice, talks about the regulation can include a penalty. Correct. And then it says you have to post the regulation. Right. Which seems to include the penalty. Well, I think certainly under the old language, it would seem that, as this Court held in Bryce, that the posting requirement is directly tied as an element of the offense. Element of what, I'm sorry? That the posting requirement is an element of the offense and is directly tied to the ability to make this a criminal offense. Okay. I think once Congress changed that language. No, but what I'm saying is this. In terms of whether the penalty is part of what has to be notified, of what he has to be notified, this ties back to the posting requirement, and the posting requirement is that you post the regulation. And the regulation is supposed to include the penalty if there's a penalty. That's correct, yes. Therefore, what's supposed to be notified includes the penalty. I mean, we're already one level non-literal here because the statute says you're supposed to have a posting, and here it appears maybe there was a posting, but that's not in the record of the trial. And so Bishel was allowing something that isn't exactly in the statute, i.e. actual notice even absent a posting. Correct. Right? But at least it has to be actual knowledge of what had to be in the posting. I would disagree with that, Your Honor. Really? I think if you look at the cases that have interpreted this actual notice, none of them have required actual notice of the language in the specific regulation. They all talk about actual notice of whether it's unlawful, whether your actions are illegal or unlawful. As I said in Bishel, the specific charge was different from what he was even warned about. He was charged that he had to respond to the directions of officers, and he was warned about chaining himself to the courthouse. In other cases, in Strong, the First Circuit case, the question was whether the defendant in that case would have known that it was wrong to smear feces on the wall in the bathroom. Or even in Moroz, the Northern District case that my opponent decided. All right. So given your assumption, which seems a little odd to me, it's still true that until he was told about if you kick the officer, you can go to jail, he wasn't told anything he was doing was unlawful. No, he was not specifically told. Right. So now another step. In other words, you're really talking about constructive knowledge rather than actual. Constructive notice instead of actual. So we're going from the regulation, from the posting to a nonliteral interpretation of actual notice, and now you're really going to a constructive notice kind of argument. If we were cabining it to the very beginning when he turned around and kicked the officer. But would constructive notice be prohibited by Bishel? Because as I read Bishel, it doesn't set a test. So then how do we, you know, would we be able to take constructive notice or have you given up on that argument because you're saying this is actual notice, that's the end of the story? I'm not sure that we would give up on that argument. I think certainly once he's warned you can go to jail if you assault a federal officer and he responds by attempting to headbutt an officer, then that is actual notice and we don't even need to get into it. I think most of the cases. I'm sorry to interrupt. He did more than just threaten the headbutt and attempted and threatened the officer's family. He responded with extreme profanity, you know, F.U., this is B.S. You know, he had been advised he could be arrested, and his response, the way he responded verbally indicated he understood. He was being warned he was breaking the law and there could be consequences, and he didn't care. He knew, in fairness, he knew that he was breaking the law. Absolutely, Your Honor. I think the most important fact in that situation is that he's specifically warned not to assault an officer and then he responds immediately by physically moving his head towards the officer and threatening to headbutt him. And not assaulting the officer, in fact. I mean, he did actually assault the officer after he was told not to assault the officer. Supervisor Carr testified he had his hand on his shoulder, he's right next to him, and the defendant moved his head into his space. So I think it's, I mean, he didn't actually headbutt him, but I don't think you could argue, well, we would argue. Okay, your time is up, and we are trying to keep to time. And thank you for your useful argument. Thank you. Sir? I'll give you one minute in rebuttal. Thank you very much. What I want to direct my time towards is this, Your Honor. I think what's significant about Bishel is its citation to the Fourth Circuit case of Kassiginall from 1970. What's interesting about that case is the quote from that opinion is, the demonstrators were told, quote, those who do not leave voluntarily by midnight will be arrested and taken to a federal detention center. I think it's important that Bishel was recognizing that this case was important because it told them exactly what the conduct was and that they could go to jail. Your Honor, as you pointed out, Judge Bergeron, that- But can I just ask one question on that? Because if the Fourth Circuit, the Fourth Circuit has subsequent case law after the statute was changed, that's different from the case that you're referencing that we relied on in Bishel. Does that change that analysis? I don't think it does. I think the important thing there, Your Honor, was just that when the Bishel court was looking at how you could overcome the failure for the conspicuous posting, it was clear that what you would have to impart is what the sign would have imparted if it was there, namely that there's a regulation and the consequence is going to jail. Counsel, you're citing the section of Bishel where the court's sort of doing a rundown of what other circuits have done. And right before discussing the Fourth Circuit case in Kazagnol, the court discusses the Fifth Circuit case in Strykov and says, absent any showing that Strykov did in fact have notice of the prescriptions of the regulation, the conviction cannot stand. So there it seems the Fifth Circuit's taking a different formulation and suggesting that actual notice, notice in fact, is sufficient. So why should we agree Bishel in this recitation what other circuits have done to go to the most stringent test available? The reason I say that, Your Honor, is, again, this is a saving provision. This is what happens if it's not posted. And I think that you would need to ensure that the notice is more closely tied to the conduct and the actual consequences of it because, again, this is only meant to save an otherwise arrest or conviction that wouldn't stand. Okay. Thank you very much. Thank you both for your argument. The case of the United States v. Sobreros is submitted.
judges: Berzon, Nelson, Bade